UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| MICHAEL O. CANDELARIA, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | CAUSE NO. 3:07-CV-12 RM |
| vs. | ) | |
| | ) | |
| ED BUSS, | ) | |
| | ) | |
| Respondent | ) | |

OPINION AND ORDER

Michael O. Candelaria, a *pro se* prisoner, filed this habeas corpus petition attempting to challenge his 90 day loss of good time in case MCF 06-06-0442 on July 10, 2006 by the Conduct Adjustment Board ("CAB"). Mr. Candelaria was charged with and found guilty of possession of tattoo paraphernalia in violation of Class B offense # 244. The respondent filed a response on April 23, 2007. Mr. Candelaria hasn't filed a traverse and the time for doing so has passed.

Mr. Candelaria raises four challenges in his petition. In his first challenge, Mr. Candelaria asserts that he received two conduct reports for the same offense in violation of the Adult Disciplinary Procedure Act. This court cannot grant habeas corpus relief based on the violation of a prison rule, so in this proceeding, it is not relevant whether these rules were violated. See Estelle v. McGuire, 502 U.S. 62 (1991). Furthermore, if Mr. Candelaria is trying to argue the he was subjected to double jeopardy, this argument is without merit. Although the two conduct reports were the result of one cell search, one conduct report charged Mr. Candelaria with possession or use of any hazardous chemical. (docket #5-11).

The conduct report that led to the sanction being challenged in this case charged Mr. Candelaria with possession of tattoo paraphernalia. (docket #5-2). Mr. Candelaria received two conduct reports for two separate violations involving different materials and substances. There is no constitutional issue involved in this conduct.

In his second and fourth arguments, Mr. Candelaria asserts that the CAB denied him evidence. Due process requires, among other procedural safeguards, that a prisoner be allowed to "call witnesses and present documentary evidence when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Wolff v. McDonnell, 418 U.S. 539, 566 (1974). While Wolff doesn't guarantee prisoners the unfettered right to call any witnesses or present any evidence they wish regardless of its relevancy, the hearing board "may not arbitrarily refuse to consider exculpatory evidence simply because other evidence in the record suggests guilt." Piggie v. McBride, 277 F.3d 922, 925 (7th Cir. 2002). Although the hearing board need not explain to the inmate why it denied his request for evidence, it has the burden of proving to this court in a habeas corpus proceeding that its denial was not arbitrary or capricious. Id.

Mr. Candelaria contends that he asked the CAB to review the items confiscated to examine whether they contained his Department of Correction number. The CAB indicated that they reviewed pictures of the confiscated items. (docket #5-8). Although they did not physically handle the confiscated items, the CAB reviewed pictures of the confiscated items. The CAB's review of the photos of the confiscated items complied with Mr.

2

Candelaria's request that the CAB view the confiscated items.[1]

Mr. Candelaria next argues that he wasn't given a copy of the internal affairs locker sign-out sheet. Mr. Candelaria did not request a copy of the internal affairs locker sign-out sheet either during screening or during the disciplinary hearing. The CAB did not violate Mr. Candelaria's rights by not reviewing evidence that Mr. Candelaria did not specifically request.

Mr. Candelaria also alleges that he was not provided with chemical testing, a MSDS sheet, on the alleged tattoo ink. During screening, Mr. Candelaria requested a chemical report-MSDS. (docket # 5-5).  The CAB denied his request for a MSDS because they could not obtain one: the substance was not in its original container. (docket # 5-8). Though Wolff permits inmates the right to present evidence, testing is not presenting evidence – it is creating it. That is to say, no chemical testing results existed to present. What Mr. Candelaria asked was that test results be created so that he could introduce them. An inmate is not constitutionally entitled to such testing as a part of a disciplinary hearing. Freitas v. Auger, 837 F.2d 806, 812 n.13 (8th Cir. 1988) ("He intimates that he should be allowed to take a polygraph examination which addresses the question of whether he participated in planning or furthering an escape. We hold that Freitas was not entitled to a polygraph examination on this issue.") As a result, there was not a due process error.

---

[1] Even if the CAB erred by viewing pictures rather than the physical evidence, that error is of no consequence. The items were still found in Mr. Candelaria's cell. Under Hamilton v. O'Leary, 976 F.2d 341, 346 (7th Cir. 1992), the mere fact that the item was found in the cell that Mr. Candelaria shared with another individual is some evidence of his guilt. It does not matter whether another individual's DOC number was inscribed on the items.

Finally, Mr. Candelaria alleges that there was insufficient evidence to find him guilty of possession of tattoo paraphernalia. He says the items were found in a two man cell and that the CAB could not prove that the items belonged to him. "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445, 455-56 (1985).

> [T]he findings of a prison disciplinary board [need only] have the support of some evidence in the record. This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. Although some evidence is not much, it still must point to the accused's guilt. It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.

Webb v. Anderson, 224 F.3d 649, 652 (7th Cir. 2000) (quotation marks, citations, parenthesis, and ellipsis omitted).

> In reviewing a decision for some evidence, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis.

McPherson v. McBride, 188 F.3d 784, 786 (7th Cir. 1999) (quotations marks and citation omitted). "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445, 457 (1985). Therefore, "once the court has found the evidence reliable, its inquiry ends - it should not look further to see whether other evidence in the record may have suggested an opposite conclusion." Viens v. Daniels, 871 F.2d 1328, 1335 (7th Cir. 1989).

The CAB relied upon the staff reports, the statement of the offender, the evidence

4

from witnesses, the photos, and the conduct report. (docket # 5-8). The conduct report states

> ...c/o Ruisi and I, c/o Meives, were doing a random shake down of cell 431/432. During the shakedown several tattoo items were found in offender Candelaria, Michael 992592 property. Among the items found was a radio containing a tatoo motor. A wind up alarm clock that contained a tattoo gun complete with a needle. A bottle of ink was also found in Candelaria's property box. When Offender Candelaria was questioned about the item being confiscated, Candelaria asked "Why I was taking his radio." To which I, c/o Meives, replied, "Because it contained a tattoo motor." Also a jar containing a battery pack with wires was found.

(docket #5-2). Officer Ruisi also provided a statement which stated:

> On June 29, 2006, at approximately 0845 Hours, I, Officer S. Ruisi, was assisting in the random shakedown of cells #431/#432 with Officer B. Meives. During the search, several tattoo items were found amongst Offender Michael Candelaria's property. Including an alarm clock concealing a compete tattoo gun with needle, a bottle of ink and a tatoo (sic) motor concealed in "walkman" personal radio.

(docket #5-3). These reports, as well as the photographs of the confiscated items, are some evidence to support the CAB's finding that Mr. Candelaria was guilty of possession of tattoo paraphernalia. See Hill, 472 U.S. at 456–57 (disciplinary action supported when inmate was one of three seen fleeing from scene of assault even when victim denied fellow inmates had assaulted him); Hamilton v. O'Leary, 976 F.2d 341, 346 (7th Cir. 1992) (discovery of weapon in area controlled by four inmates created twenty-five percent chance of guilt supporting disciplinary action); Mason v. Sargent, 898 F.2d 679, 680 (8th Cir. 1990) (disciplinary action supported when contraband was found in locker shared by two inmates).

5

For the foregoing reasons, the petition for writ of habeas corpus is **DENIED**.

SO ORDERED.

ENTERED: June  21 , 2007

                                                                   /s/ Robert L. Miller, Jr.
                                                                 Chief Judge
                                                                 United States District Court